## THE PEOPLE *ex rel.* Marvin S. Robinson

### *v.*

### SETH F. HANCHETT.

*Filed at Springfield September 27, 1884.*

1. INSOLVENT DEBTOR—*arrest on ca. sa.—refusal of county court to discharge—how far conclusive.* The judgment of the county court, on the application of a debtor to be discharged from imprisonment for debt, holding that the case was not one in which he was entitled to a discharge on schedule and assignment of his property, is final and conclusive upon all other courts until reversed or otherwise annulled.

2. SAME—*retaining custody of debtor—return of writ, or its expiration.* Where the sheriff arrests one under a *ca. sa.,* it is his duty to retain the custody of the defendant until the judgment is satisfied, or the defendant is otherwise legally discharged, without reference to what becomes of the writ, or even whether it remains in force, or has expired by lapse of time. It is not necessary to renew the writ to make the continued imprisonment legal.

3. A writ of *ca. sa.,* like other executions, is made returnable by law within ninety days after its date, yet the imprisonment of the debtor does not end with its return or expiration.

4. SAME—*giving bond for appearance at a further day—waiver as to time of continuance.* The provision in section 8 of the act relating to insolvents, that the county court, on an application for a discharge, may continue the hearing from time to time, "not exceeding thirty days," being for the benefit of the debtor may be waived by him, and is waived by his consent, express or implied, to a continuance for a longer time; and such court will not thereby lose jurisdiction, and his bond for his appearance on the day set for hearing will not be rendered invalid.

5. SAME—*enlargement of debtor on giving bond, whether an escape.* Where an insolvent debtor is by the county court admitted to bail pending an application for a discharge, as authorized by the statute, his enlargement under his bond does not amount to an escape, voluntary or negligent, so as to prevent him from being again imprisoned for the same debt.

6. So where an insolvent debtor voluntarily enters into bond for his appearance before the county court at the time appointed for the hearing of his application to be discharged, even though the hearing is continued more than thirty days, by his consent, he will be in the custody of the law and under the control of the court on his appearance on the day set for the hearing, and that the court, on denying his application, may legally order him to be again taken into custody by the sheriff, and his imprisonment under such order will be as legal as his first arrest.

7. SAME—*voluntary escape—whether a discharge from imprisonment.* The ancient rule that a debtor in execution, by a voluntary escape became discharged both from imprisonment and the debt, leaving the creditor to look to the sheriff alone for his debt, is no longer in force, and upon such escape he may be lawfully re-arrested and imprisoned.

8. SAME—*remanding to custody of officer without process.* Where a debtor has been legally arrested by a sheriff under a *ca. sa.* running in the name of the People, and is enlarged on bond for his appearance on the day set for the hearing of his application for a discharge, the court, on refusing a discharge, may order him back into the officer's custody without process in the name of the People, and this may be verbally done.

This was a petition for a writ of *habeas corpus* filed in this court, for the discharge of Marvin S. Robinson from imprisonment under a *capias ad satisfaciendum.* The facts necessary to an understanding of the case appear in the opinion of the court.

Mr. ROBERT HERVEY, and Messrs. STUART & BEATTIE, for the relator :

The *ca. sa.* after ninety days was dead, and the order of the county court could not revive the same. *Fawkes* v. *Davidson,* 8 Leigh, 555 ; Rev. Stat. chap. 77, sec. 8.

When the sheriff permitted the relator to depart his custody, on July 13, under the order of the county court, that was a voluntary escape, and he could not be re-arrested in the same suit. Escapes are of two kinds—voluntary, when the sheriff and process leave the defendant ; or negligent, when without fault of the officer the defendant leaves. *Riley* v. *Whittaker,* 49 N. H. 148 ; *Butler* v. *Washburn,* 25 id. 258 ; *Clark* v. *Cleveland,* 6 Hill, 349.

Upon a negligent escape the defendant can be re-arrested, but upon a voluntary escape by act or mistake of the sheriff he can not. Cases above cited, and *Bush* v. *Pettibone,* 5 Barb. 276.

The county court had no authority to continue the case exceeding thirty days. Rev. Stat. chap. 72, sec. 8.

The order of the county court for the re-arrest was void as process, because it did not run in the name of the People. *Leighton* v. *Hall,* 31 Ill. 108; *Sidwell* v. *Schumacher,* 99 id. 433.

Mr. Justice Walker delivered the opinion of the Court:

This was a petition for a writ of *habeas corpus,* presented to this court for the purpose of obtaining the discharge of petitioner from imprisonment under a *capias ad satisfaciendum,* issued out of the Superior Court of Cook county. It appears that one Blumenthal, at the January term, 1883, of that court, recovered a judgment against petitioner for the sum of $800, and costs. The plaintiff in that judgment, on the 13th day of July, following, sued out the *ca. sa.* under which petitioner was arrested. He, on the same day, filed an application to the county court of Cook county, under the Insolvent Debtor's law, to obtain his discharge under its provisions. The county court thereupon, after inquiring of the parties if it would be satisfactory to them to set the case for hearing on the 17th day of the next September, and neither party objecting, that date was fixed for the hearing. The court also ordered that petitioner be released from custody on his entering into bond for his appearance on the day set for trial, which he did, and the sheriff permitted him to go at large. On the day set for trial, petitioner appeared in the county court, and on a hearing, that court dismissed the petition, and petitioner appealed to the circuit court of Cook county, but on the 18th day of December, 1883, the appeal was dismissed, for failing to prosecute the appeal. At the time when the county court dismissed the petition, on the 17th day of September, an order was entered admitting petitioner to bail until the 17th day of September, 1883. It is alleged in this petition that the sheriff, on the 13th day of July, 1883, returned the writ of *ca. sa.* to the clerk's office from which it

issued, indorsed that petitioner had been arrested, and had been released by his giving bond for his appearance, and the writ remained in the office of the clerk of the Superior Court from the 13th day of July, 1883, until the 1st day of March, 1884, when it was withdrawn by the sheriff, without leave of the court, for the purpose of re-arresting petitioner. Application was made to the circuit court, and a writ of *habeas corpus* was issued and returned, but the application was dismissed after the court had announced its refusal to release petitioner. Another writ of *habeas corpus* was sued out of the Superior Court of Cook county, and the return shows it was pending when this writ was issued, and after it was issued, on the 5th day of June, an order was, entered, in the Superior Court, which recites that the court had, on the 15th day of May, 1884, decided to enter, an order remanding petitioner to the custody of the sheriff, but had suspended the entry of the order until that date, and the order recites that the petitioner is not so remanded, and the petition for the writ of *habeas corpus* was dismissed. During the pendency of the application for a discharge of petitioner under the writs of *habeas corpus*, he was at large under recognizance, and he was not in the custody of the sheriff when this writ was served on him. But respondent waives these objections, and argues the case on the merits. We shall therefore proceed to their consideration.

Inasmuch as the county court held that this was not a case in which a debtor is entitled to be discharged on a schedule and assignment of his property, we must regard that judgment as conclusive until reversed or otherwise annulled.

When the sheriff makes an arrest under a *ca. sa.*, the defendant becomes the prisoner of the sheriff, and it is the duty of the sheriff to retain the custody of the defendant until the judgment is satisfied or the defendant is otherwise duly discharged from custody,—and this, too, without reference to what may become of the writ, or whether it remains in force

or has become *functus officio.* If the legality of the imprisonment depended on the life of the writ, it would become necessary to obtain a new writ at the expiration of the life of the first writ. Such a practice, it is believed, has never obtained in this State, nor does the statute contemplate such a practice. The 4th section of the chapter entitled "Judgments and Executions," gives an execution against the goods, chattels, lands and tenements (and the body) of the defendant, when authorized by law; and the 8th section of the same act makes executions, and writs of *venditio rei exponas,* returnable in ninety days after their date. It therefore follows that a *ca. sa.* must be returnable within that time, and yet the imprisonment does not end with the return, or the expiration of the life of the writ.

Petitioner then being legally in execution and imprisonment, he had the right to be taken before the county court on his giving the required notice, under the 3d section of chapter 72 of the Revised Statutes of 1874; and it was, by the 4th section, the duty of the sheriff to convey him before the judge of the county court at the appointed time, and the creditor at whose instance he was arrested had the right to contest his right to be discharged, which he successfully did in this case. The sheriff undeniably had the custody of petitioner before and at the time of producing him in the county court, and he remained in custody until he gave bond for his appearance at the time fixed for trial, and when he surrendered himself at that time he thereby returned to the custody of the sheriff. The 8th section of the act authorizes the county court to permit him to give such bond, and provides that it shall contain a provision that he will surrender himself to the officer in whose custody he was when it was given. The bond and his return to such custody are expressly provided for by that section, and it is impossible to hold that there was any kind of escape when he was enlarged under the bond. That was done in strict conformity to the requirements of the statute.

It would be unreasonable to hold that a compliance with the statute could produce an escape. A strict compliance with the statute can never be construed into an escape, either voluntary or negligent.

It is, however, urged, that the 8th section having provided that "the court may continue any hearing from time to time, not exceeding thirty days at any one time, and may remand the debtor into the custody of the officer, or allow him to give bond for his appearance" at the time fixed for the hearing, the law was violated by adjourning the hearing for more than sixty days; that the order of adjournment, and the bond, were illegal and void; that the court thereby lost all jurisdiction over the subject matter and the person of petitioner, and as he was enlarged under a void bond, it amounted to a voluntary escape, and having so escaped he could not be again imprisoned for the same debt, and hence he is entitled to his discharge from custody. There are to this proposition several answers. In the first place, it appears by the return that at the time the hearing in the county court was continued for more than thirty days, the court inquired of the parties if the day to which the case was continued would be satisfactory to them, and no objection was interposed. This undeniably amounted to consent. Even if no such question had been asked and petitioner had not objected, it would have amounted to a waiver,—and there can be no doubt that he could waive the requirement of the statute by express or implied consent. The provision of the statute was adopted for the benefit of the debtor, and he has most clearly the right to waive the benefit which he did in this case, and the court did not thereby lose jurisdiction either of the subject matter or the person, and he became a prisoner in the custody of the law and under the control of the court when he appeared, according to the condition of his bond, on the day set for the hearing; and when the court refused to discharge him on the hearing of his application, and ordered him into the cus-

tody of the sheriff, his imprisonment was as legal and valid as when he was first arrested, because the entire proceeding was in conformity to and in compliance with the statute.

But if it were conceded that by enlarging petitioner under the bond it amounted to an escape, it by no means follows that he could not be again arrested. Anciently it was held that by a voluntary escape the debtor became discharged both from the imprisonment and the debt, and the creditor could look alone to the sheriff for his debt; but the doctrinē was not of long continuance, as it was, soon after its announcement, overruled. The present doctrine is well stated in the case of *Carthrae* v. *Clarke*, 5 Leigh, 268. That was an action on a prison bounds bond. The defence was that the sheriff had voluntarily permitted the debtor to escape, and had re-arrested him, and then taken the bond in suit. It was there contended that the re-arrest was not legal, and he was not legally imprisoned when he executed the bond, and that it was therefore void. In answer to this position the court said: "It is said in 2 Bacon's Abridgment, 'Escape,' C, p. 515, that it was formerly held if the sheriff suffered a prisoner in execution to make a voluntary escape, the prisoner was, in such case, absolutely discharged from the creditor, and that the right of action was entirely transferred against the sheriff, who, by means of such escape, became a *debtor ex delicto*,—for which *Arundel* v. *Wytham*, Leo. 73, and the case of *Sheriff of Essex*, Hob. 202, are cited. The consequence of that doctrine was, that the creditor was put completely in the power of the sheriff, and the fault of that officer had the singular effect of releasing the debtor from the claim of the creditor. The principle was soon after repudiated by the courts of England. The case of *Trevillian* v. *Lord Roberts*, is reported in Rolle's Abr. 902, pl. 8, 11 Viner's Abr. 'Execution,' *v. a.* pl. 8, p. 26: 'If A be in execution at the suit of B, and escape *with the assent of the sheriff*, and after, the sheriff *retakes* him and keeps him in prison, he

shall be in execution to B, because, though B may bring an action against the sheriff for the voluntary escape, yet it is at his election, for the party in execution shall not, by his own wrong, put B to his action against the sheriff against his will, and it may be that the sheriff is not able to give him recompense,'—and it is then said that the *Sheriff of Essex case*, in Hobart, is not law. It establishes the proposition that in case of a *voluntary* escape, and *recapture* by the sheriff, and detention by him of the prisoner, he shall be in execution to the creditor. It is not necessary that the creditor should express his assent to his being in execution to him, nor by any order or direction, either oral or in writing, charge him in execution, for according to the case 'he shall be in execution to B.' It establishes the proposition that it is in the election of the creditor to bring an action against the sheriff for the voluntary escape, and if he elects to bring such action he thereby manifests his intention not to consider the debtor as being in execution to him. It shows that if the creditor does not bring such action, the debtor is his true prisoner of course, and without any further action on his part. It gives the best reasons why this result should take place. The debtor shall not, by his misconduct, compel the creditor to look to the sheriff as his debtor, whether the creditor will or no; and besides, the sheriff may be unable to make him recompense." The court held the bond legal and valid. To the same effect is *Fawkes* v. *Davidson*, 8 Leigh, 555, and the doctrine of *Carthrae* v. *Clarke* is reaffirmed. And see *Dole* v. *Moulton*, 2 Johns. 205, and *Lansing* v. *Fleet*, 2 id. 2. These cases are to the point on that question. The cases referred to in the brief for petitioner are not applicable, as the facts are not similar to those in this case.

It is objected that the order of the county court remanding petitioner to the custody of the sheriff did not run in the name of the People, when the constitution requires all process to so run. The order was not process to arrest petitioner.

7—111 ILL.

He had been arrested, and was in custody under legal and competent process, and no other or further process was required. The practice has never obtained in this jurisdiction to issue process, or even an order of record, for the purpose of bringing a prisoner confined in jail into court. The practice is for the court to verbally order the sheriff to bring a prisoner into court, and remand him by a similar order; and it has never occurred to the most technical criminal lawyer to insist that the prisoner was released because the order was verbal, and not in writing, and running in the name of the People. Under the insolvent laws the county court has as ample power to have an imprisoned debtor, on his application for a discharge, brought into court by the sheriff, and to so remand him, as has the circuit court to so control prisoners charged with crime.

Having carefully considered all the questions presented, we are of opinion that petitioner was properly and legally imprisoned, and as he did not show sufficient ground for a discharge, he was properly remanded to jail from whence he was brought.

*Prisoner remanded.*