**In the matter of the petition of Julius J. Sankstone, Appellant, v. The People of the State of Illinois, Appellee.**

## Gen. No. 17,480.

1. EXECUTION—*discharge of insolvent debtor.* It cannot be contended that the record of proceedings for discharge under the Insolvent Debtors Act shows that the court lost jurisdiction because an adjournment was taken for more than thirty days, where from an additional transcript it appears that the court found that proper adjournments were taken during such period but that the clerk had failed to transcribe the orders from his memorandum book to the records, and it was ordered that orders be entered *nunc pro tunc* as of the dates when such adjournments were taken.

Sankstone v. The People, 175 Ill. App. 653.

2. EXECUTIONS—*discharge of insolvent debtor.* A person seek-ing discharge under the Insolvent Debtors Act cannot urge that the trial court lost jurisdiction because an adjournment was taken for more than thirty days, where he did not object to trial after such alleged adjournment but after verdict on such trial the order remanding him to the custody of the sheriff was stayed on his motion until his motion for new trial could be disposed of.

3. EXECUTIONS—*when finding that malice was gist of action.* In a tort action in the municipal court wherein it is set forth that defendant maliciously, wilfully and intentionally converted money collected for plaintiff with intent to defraud, a verdict is equivalent to a finding that malice was a gist of the action where it finds defendant "guilty of having maliciously, wilfully and intentionally, with intent to injure and defraud the plaintiff, converted to de-fendant's own use the property of the plaintiff."

4. INSOLVENT DEBTORS—*when proper for county court to submit fraud to jury.* On petition in the county court for release under the Insolvent Debtors Act by one found guilty by a jury in the municipal court of maliciously converting money collected for plaintiff with intent to defraud, if the county court can not deter-mine from the record that malice was the gist of the action then it properly submits the question of the fraud alleged to a jury.

5. INSOLVENT DEBTORS—*when submission to jury by county court of fraud alleged harmless.* On petition in the county court for release under the Insolvent Debtors Act, where such court sub-mitted to the jury a question of petitioner's guilt of the fraud alleged in the action in the municipal court, of which he was there found guilty by a jury, such submission of the county court, if error, is harmless where the verdict in the municipal court was equivalent to finding that malice was the gist of the action, and the result is the same as if such petitioner had been remanded to custody without the second jury hearing.

Appeal from the County Court of Cook county; the Hon. FRANCIS E. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed December 19, 1912.

ODE L. RANKIN, for appellant.

WHITMAN & HORNER, for appellee; HENRY HORNER, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

On April 4, 1910, Julius J. Sankstone filed in the

County Court of Cook county his petition to be released from arrest under the provisions of chapter 72 of the Revised Statutes of Illinois—commonly known as the Insolvent Debtors Act. On September 20, 1910, the County Court ordered and adjudged that said Sankstone be remanded to the custody of the bailiff of the Municipal Court of Chicago, that the costs of the proceeding be taxed against the petitioner and that the arresting creditor have execution therefor, to reverse which judgment this appeal is prosecuted.

The material facts are that on January 3, 1910, Max Karlsburg commenced in said Municipal Court a tort action against Sankstone, in which it was set forth by affidavit that Karlsburg, as the owner of a certain building in Chicago, had employed Sankstone as agent to collect the rents thereof, and that Sankstone had maliciously, wilfully and intentionally converted to his own use the sum of $979.37 out of the rents collected by him. Sankstone was arrested by virtue of *capias ad respondendum* and subsequently released under bond. A jury trial was had, and on February 2, 1910, the jury returned a verdict as follows:

"We, the jury, find the defendant, Julius J. Sankstone, guilty of having maliciously, wilfully and intentionally, with intent to injure and defraud the plaintiff, converted to defendant's own use the property of the plaintiff, to-wit $933.52 * * * and assess plaintiff's damages at the sum of $933.52."

On February 26, Sankstone's motion for a new trial was overruled, judgment was entered upon the verdict, and a *capias ad satisfaciendum* was issued on the judgment. On April 4, the day that Sankstone filed his petition for discharge in the County Court, a hearing was had in that court and he was released under bond and the further hearing of the matter was continued by agreement until April 15. On that day the parties appeared and the hearing was again continued to April 22, and on that day was again continued to May 3, by agreement. On May 3, by agreement of the

parties, the further hearing was continued until May 17. Pending this continuance, to-wit: on May 12, Karlsburg filed in said court an answer to Sankstone's petition for release, setting forth the proceedings in the Municipal Court of Chicago, as above stated, and on May 17 the further hearing of the matter was continued until June 1. As shown from the original transcript of the record filed in this court, the next order of the County Court was entered June 29, from which it appears that both parties were present in person, and the court ordered a jury to be impaneled to try the issues, which was done, and on July 1, the jury returned a verdict as follows: "We, the jury, find the petitioner guilty of the fraud alleged against him." A motion for a new trial was on that day entered and continued from time to time until September 20, when said motion was denied and the judgment complained of entered.

From the additional or supplemental transcript of the record filed in this court, it appears that on June 1, by agreement of the parties, it was ordered that the hearing on said petition be continued until June 7, and that on June 13, after a hearing, it was ordered that further hearing be continued until June 21, and that on June 13, a transcript of the proceedings in the Municipal Court was filed in said County Court; that on June 21, the further hearing on said petition was continued until June 24, 1910; that on June 9, *1911*, the court found that on June 7, 1910, the cause came on for hearing and was, by agreement of the parties, ordered continued to June 13, 1910, and also that on June 24, 1910, by agreement of the parties, the cause was ordered continued to June 29, 1910, and that the minute clerk of this court was directed by the judge to enter said orders in the records of said court, and that said clerk thereupon, on June 7, 1910, and on June 24, 1910, respectively, contemporaneously with the directions and orders of the court, made entries of said order in the memorandum book of said clerk, and that,

through error, said clerk failed to transcribe said orders from said memorandum book to the records of the court, and that all parties to the cause were pres-ent in person and by their counsel at the times said clerk was respectively directed to enter said orders, and that, therefore, it was ordered and adjudged that an order be entered, *nunc pro tunc* as of June 7, 1910, continuing the hearing of said cause until June 13, 1910, and that a further order be entered, *nunc pro tunc* as of June 24, 1910, continuing the hearing of said cause until June 29, 1910. No bill of exceptions appears either in the original or in the additional or supplemental transcript of the record filed in this court.

It is contended by counsel for appellant, in his brief and argument (filed in this court on May 22, 1911, and prior to the filing of said additional or supplemental transcript of the record) that section 8 of the act concerning insolvent debtors provides that "the court may adjourn any hearings from time to time, not exceeding thirty days at any one time;" that on May 17, 1910, the case was called and the hearing continued to June 1; that no further action was taken by the court until June 29, when the case was called and proceeded to trial; that inasmuch as no action was taken by the court on June 1, and not until more than thirty days after May 17, the court, under said provision of the statute, lost jurisdiction to further proceed, and the subsequent proceedings were void for want of jurisdiction. The actions of the court after May 17, and prior to June 29, as disclosed from said additional or supplemental transcript, show, we think, that counsel's contentions are without merit. It appears that by agreement of the parties the court ordered, on June 1, 1910, that the hearing be continued until June 7, and that on June 13 a further continuance was ordered until June 21, and that on that day a further continuance was ordered until June 24, and that these

orders were entered of record at the times made. It further appears from the *nunc pro tunc* orders of the court that on June 7 the court, by agreement of the parties, ordered a continuance until June 13, and that on June 24, by agreement of the parties, the court ordered a continuance until June 29—the day the trial of the case by a jury was commenced, and that these orders were in fact entered in the memorandum book of the clerk at the times made, but that the clerk through error neglected and omitted to transcribe the same in the records of the court. Furthermore, it appears from the original transcript that on July 1, after the verdict of the jury finding Sankstone guilty had been entered, *on motion of Sankstone,* the order remanding him to the custody of the bailiff was stayed until his motion for a new trial could be considered and disposed of, and it nowhere appears that Sankstone objected to his case being tried on June 29. People v. Hanchett, 111 Ill. 90, 95; Rohrhof v. Schmidt, 218 Ill. 585, 587.

It is further contended by counsel that the only question which the record of the Municipal Court presented to the County Court was one of law to be determined by the latter court from said record, *i. e.,* whether malice was the gist of the action in said Municipal Court, and that the County Court erred in submitting the question whether Sankstone was guilty of the fraud alleged to the jury.

Section 2 of the Insolvent Debtors Act provides:

"When any person is arrested or imprisoned upon any process issued for the purpose of holding such person to bail upon any indebtedness, or in any civil action when malice is not the gist of the action, or when any debtor is surrendered or committed to custody by his bail in any such action, or is arrested or imprisoned upon execution in any such action, such person may be released from such arrest or imprisonment upon complying with the provisions of this act."

Section 5 of the same act provides:

"When any debtor is arrested or imprisoned for debt upon charge of fraud, or upon execution on the charge of refusal to surrender his estate for the payment of any judgment, he shall be entitled,   *   *   * to have the question, whether he is guilty of such fraud, or has refused to surrender his estate, tried by a jury,   *   *   *.  If the jury shall find the debtor 'not guilty' of such fraud, or refusal, as the case may be, the debtor shall be discharged from the arrest or imprisonment,   *   *   *   If the debtor shall be found 'guilty' of such fraud or refusal, he shall be remanded to the custody of the proper officer;   *   *   *."

This court said in the case of In re Mansfield, 120 Ill. App. 511, 513:

"Malice, as used in the Insolvent Debtors Act, 'applied to that class of wrongs which are inflicted with an evil intent, design or purpose.' It implies that the guilty party was actuated by improper or dishonest motives and requires the intentional perpetration of an injury or wrong upon another.   *   *   *   The gist of an action is the essential ground or principal subject-matter, without which the action could not be maintained."

The jury in the Municipal Court case found by their verdict that Sankstone was "guilty of having maliciously, wilfully and intentionally, with intent to injure and defraud the plaintiff, converted to defendant's own use the property of the plaintiff." This verdict was equivalent to a finding by the jury that malice was the gist of the action. Blattau v. Evans, 57 Ill. App. 311, 315; In re Mansfield, 120 Ill. App. 511, 515. If it be argued, inasmuch as in suits of the fourth class in the Municipal Court the issues are to be determined without written pleadings, and the action is what the evidence makes it (Schwarzschild & Sulzberger v. Goldstein, 121 Ill. App. 1, 3; Doherty v. Schipper & Block, 157 Ill. App. 413, 422; Edgerton v. Chicago, R. I. & Pac. Ry. Co., 240 Ill. 311, 313) that the court could not determine from an inspection of the record whether or not malice was the gist of the action, then the

County Court properly submitted the question whether Sankstone was guilty of the fraud alleged against him to a jury. Schwarzschild & Sulzberger v. Goldstein, *supra*. In any event, the proceedings in the County Court, which resulted in a second verdict of guilty and in again remanding Sankstone to the custody of the bailiff, did him no harm, and he cannot complain, since the result is the same as if he had been remanded without a second hearing before a jury. Penoyer v. People, 105 Ill. App. 481, 484.

For the reasons indicated the judgment of the County Court is affirmed.

*Affirmed.*