# In re Petition of Harry C. Brown, arrested at suit of Marvin C. Greener and Charles H. Glader, on appeal of Harry C. Brown, Appellant, v. The People of the State of Illinois, Appellee.

## Gen. No. 29,569.

1. JURY—*when insolvent debtor held under capias ad satisfaciendum not entitled to jury trial.* The petitioner in proceedings under the Insolvent Debtors' Law, who had been arrested under a *capias ad satisfaciendum*, was not entitled to a jury trial, where the court was able to determine, and did determine from an inspection of the records, that malice was the gist of the action in which the writ was issued, the sole question being whether under section 2 of the Act, Cahill's St. ch. 72, ¶ 5, malice was the gist of such action, no question having arisen under section 5, ¶ 8, as to whether the petitioner was guilty of fraud or had refused to surrender his estate.

2. EXECUTIONS—*when malice is gist of action within Insolvent Debtors' Act.* Where the declaration in an action of trespass on the case practically charged the defendant with the embezzlement of trust funds, a verdict finding the defendant "guilty of conversion" was held in every way equivalent to a finding that malice was the gist of the action, in the sense in which the word is used in the Insolvent Debtors' Act.

3. EXECUTIONS—*meaning of "malice" as used in Insolvent Debtors' Act.* The word "malice," as used in the Insolvent Debtors' Act, pertains to that class of wrongs which are inflicted with an evil intent, and to be guilty of such malice it is sufficient to show that the guilty party was actuated by dishonest motives and with intention to perpetrate an injury.

4. EXECUTIONS—*necessity of demand to surrender estate or service of execution as condition precedent to arrest of insolvent debtor.* Neither the making of a demand nor the service of an execution for the turning over of the defendant's estate, under section 62 of the "Act concerning judgments," Cahill's St. ch. 77, ¶ 63, was required before arresting a defendant on a *capias ad satisfaciendum*, where the judgment was in tort, as in such case the writ against the body would issue upon motion as a matter of course.

Appeal by plaintiff from the County Court of Cook county; the Hon. I. L. WEAVER, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1924. Affirmed. Opinion filed June 17, 1925. Rehearing denied July 1, 1925.

EDWIN B. BEDERMAN, for appellant.

WALTER S. HOLDEN, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On April 4, 1924, one Harry C. Brown filed in the county court a petition in which he alleged that he had been arrested under a *capias ad satisfaciendum* issued out of the circuit court of Cook county, in favor of Marvin C. Greener and Charles H. Glader, doing business as Greener and Glader, for the sum of $2,669.28, and was then in custody of the sheriff of Cook county, under and by virtue of that writ, and was desirous of being released from such arrest or imprisonment by delivering up his property. The petitioner prayed that such proceedings be had as are prescribed or required by the laws of the State relating to insolvent debtors.

On the same day, he was released from the custody of the sheriff on bonds of $3,000, and a hearing of the case was set for April 21, 1924. On the latter date, a plea was filed by Greener and Glader in which it was alleged that the petitioner was not entitled to a discharge because he was arrested by virtue of a *capias ad satisfaciendum*, based upon a judgment in which malice was the gist of the action.

On August 8, 1924, after a hearing without a jury, the court found that malice was the gist of the action, and ordered that the petitioner be remanded to the custody of the sheriff until released by due process of law. This appeal is from that judgment.

The declaration, in the case in the circuit court in which the judgment was obtained against Brown, was trespass on the case and recites that the plaintiffs in that case, Greener and Glader, purchased from the International Products Company certain accounts receivable due to the International Products Company

from debtors of the International Products Company, to whom goods had been sold and delivered.

The declaration recites that on February 16, 1921, Greener and Glader bought from the Internatianal Products Company an account receivable in the sum of $450, due from the Chicago Feed and Fertilizer Company. It also recites seventeen other similar transactions, all taken together aggregating $2,669.28.

The declaration further recites that the accounts receivable were duly assigned in writing and delivered by the International Products Company to the plaintiffs, and that the assignment provided that the International Products Company should act as agent for the plaintiffs in the collection of the accounts and "that it would receive in trust for said plaintiffs, and, immediately upon collection, transmit to plaintiffs on the day of the receipt thereof, the original evidences of payment, or part payment, received by said International Products Company; and that said payments should not be commingled with the moneys or property of said International Products Company."

The declaration further recites that at the time of the respective assignments, and continuously since, one Rundquist was president of the International Products Company, and Harry C. Brown was secretary of that company; that they, as such officers, had the active management of the business and affairs of the International Products Company, and had charge of the collection of the corporation's accounts receivable; "that pursuant to the authority contained in said contract of assignment, said Carl A. Rundquist and said Harry C. Brown collected in cash all the said foregoing accounts, aggregating the sum of $2,669.28, but did not transmit the same, or any part thereof, to the plaintiffs, but, on the contrary, failed and refused to do so, and wrongfully and fraudulently converted the same to their own use and to the use of the International Products Company, in direct violation of

said contract of assignment and without the knowledge, consent or authority of the plaintiffs."

The declaration further recites that on February 5, 1921, Greener and Glader purchased for a consideration from the International Products Company an account due it from the Chicago Feed & Fertilizer Company in the sum of $112.50; that that account was on that date assigned in writing by the International Products Company to Greener and Glader, and guaranteed in writing to be due; that subsequently, Carl A. Rundquist and Harry C. Brown, without authority from or the knowledge of Greener and Glader, consented to the cancellation of that account, and received back from the Chicago Feed & Fertilizer Company the goods and merchandise represented by that account.

The case in the circuit court, upon that declaration, was tried before a jury, and on February 20, 1924, the jury brought in the following verdict: "We, the jury, find the defendants guilty of conversion and assess plaintiff's damages in the sum of Twenty-six Hundred Sixty-nine and 28/100 Dollars."

The record shows a stipulation between the petitioner and the respondents to the effect that no demand had been made upon the petitioner for the surrender of his estate, or any execution issued and served upon the petitioner under the circuit court judgment of February 20, 1924.

The record also shows that a motion was made by the attorney for the petitioner for a jury trial, under section 5 of an Act concerning insolvent debtors [Cahill's St. ch. 72, ¶ 8], and that it was denied.

The contention made here on behalf of the petitioner, Brown, is (1) that a demand should have been made, or an execution should have been served upon him for the turning over of his estate, under section 62 of an Act concerning judgments [Cahill's St. ch. 77, ¶ 63], before being arrested on a *capias ad satisfaciendum;* (2) that the judgment of the circuit court was

one for simple conversion, of which malice was not the gist; and (3) that he was entitled to a trial by jury.

Section 2 of the Insolvent Debtors' Act (sec. 2, ¶ 5, ch. 72, Cahill's St. 1923) provides that "when any person is arrested or imprisoned upon any process issued for the purpose of holding such a person to bail upon any indebtedness, or in any civil action when malice is not the gist of the action, or when any debtor is surrendered or committed to custody by his bail in any such action, or is arrested or imprisoned upon execution in any such action, such a person may be released from such arrest or imprisonment upon complying with the provisions of this Act."

Sec. 5 of the Act provides that: "When any debtor is arrested or imprisoned for debt upon a charge of fraud, or upon execution on the charge of refusal to surrender his estate for the payment of any judgment, he shall be entitled  *  *  *  to have the question, whether he is guilty of such fraud, or has refused to surrender his estate, tried by a jury  *  *  *  selected for that purpose. If the jury shall find the debtor 'not guilty' of such fraud, or refusal, as the case may be, the debtor shall be discharged from the arrest or imprisonment  *  *  *."

We do not think that section 5 is here involved. The petitioner in his petition alleged that he had "been arrested under a writ of Ca. Sa. issued by Circuit Court of Cook County  *  *  *  and is now in the custody of the Sheriff  *  *  *  under and by virtue of said writ, and is desirous of releasing his body from such arrest or imprisonment by delivering up his property." The plea of the respondents, Greener and Glader, alleged that the petitioner "was not entitled to his discharge because they say said Harry C. Brown was arrested by virtue of a *capias ad satisfaciendum* based upon a judgment in which malice was the gist of the action." The only controversy before the court, as the issue was made, was whether malice was the gist of the action. No question arose under sec-

tion 5 as to whether the petitioner had been guilty of fraud or had refused to surrender his estate; the sole question was whether, under section 2, malice was the gist of the action.

As the jury in the circuit court found by their verdict that Brown was "guilty of conversion" and assessed the plaintiffs' damages in the sum of $2,669.28, in our judgment that was in every way equivalent to a finding by the jury that malice was the gist of the action. The declaration in the case in the circuit court practically charged Brown with the embezzlement of trust funds. It is true that in the verdict the jury used the word "conversion," but the only reasonable conclusion, from the verdict of the jury and the issue as precipitated by the cause of action stated in the declaration and the plea thereto, is that malice was the gist of the action. The word "malice" in the Insolvent Debtors' Act implies a wrong inflicted with evil intent. It does not necessarily connote the common meaning of hatred or ill will. *First Nat. Bank of Flora v. Burkett*, 101 Ill. 391; *Kitson v. Farwell*, 132 Ill. 327. As used in the act in question, the word "malice" pertains to that class of wrongs which are inflicted with an evil intent, design or purpose. To be guilty of such malice, it is sufficient to show that the guilty party was actuated by dishonest motives and with intention perpetrated an injury. *Seney v. Knight*, 292 Ill. 206. The words "the gist of the action" have reference to those things which constitute the basis of the suit, and, without which, such a suit would not be maintainable. They mean, as said in *Jernberg v. Nix*, 199 Ill. 254, "the essential ground or object of a suit and without which there is not a cause of action."

In our judgment, malice in the sense in which the word is used in the Insolvent Debtors' Act was the gist of the action in the circuit court. *Salomon v. Buechele*, 127 Ill. App. 420; *In re Meinhardt's Peti-*

*tion,* 202 Ill. App. 266; *Sankstone v. People,* 175 Ill. App. 653.

As the jury in that court found by their verdict that Brown wrongfully and fraudulently converted the property in question, that is, as set up in the declaration, that verdict must necessarily be considered as the equivalent of a finding by the jury that malice was the gist of the action, and the trial judge in the county court was able to determine from an inspection of the record that malice was the gist of the action. *In re Warnke's Petition,* 207 Ill. App. 459.

As said by the court in *Seney v. Knight, supra,* "if it appeared from the pleadings that malice was the gist of the entire action, the doctrine of *res adjudicata* would apply." *In re Witzke's Petition v. Greer,* 195 Ill. App. 206.

It is also urged for the petitioner that before being arrested on a *capias ad satisfaciendum,* a demand should have been made or an execution should have been served upon the petitioner for the turning over of his estate under section 62 of the "Act concerning judgments." But the issuance of the *capias* in question was not dependent upon an anterior demand and execution; the judgment being in tort, the writ against the body would issue, upon motion, as a matter of course. *People v. Walker,* 286 Ill. 541; *Field & Co. v. Freed,* 269 Ill. 558.

The judgment, therefore, will be affirmed.

*Affirmed.*

O'Connor, P. J., and Thomson, J., concur.